IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **CHARLES ALLEN, individually and on behalf of all others similarly situated who consent to their inclusion in a collective action,** | |
| **Plaintiffs,** | |
| **vs.** | Civil Action No. 1:13-CV-3768-RWS |
| **JOBO'S, INC., d/b/a BJ Roosters, a corporation, and ROBERT HAMILL and JOHN MOLINARI, individuals,** | |
| **Defendants.** | |

## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE

NOW COMES Plaintiff Charles Allen individually, and on behalf of all others similarly situated who consent to their inclusion in a collective action, through counsel, and responds in opposition to Defendants' Motion to Strike, and shows the Court as follows:

## PROCEDURAL HISTORY

Plaintiff, and all others similarly situated (hereinafter referred to collectively as "Dancers") are former "go-go dancers" at BJ Rooster's, in Atlanta, Georgia. BJ Rooster's is a bar owned and operated by Defendants Jobo's LLC, John Molinari

1

and Robert Hamill (collectively "Defendants"). Although "go-go dancers" have worked at BJ Rooster's since 2006, until January 2014, Defendants never paid any wage, of any kind, to a single "go-go dancer." For this reason, on November 13, 2013, Plaintiff Allen, on behalf of himself and all others similarly situated, sued Defendants alleging violations of §§ 206 and 207 of the Fair Labor Standards Act ("FLSA").

On November 25, Defendants moved for summary judgment claiming that summary judgment is appropriate because none of the defendants ever employed any of the Dancers.[1] The Dancers timely filed their Response in Opposition to Defendants' Motion for Summary Judgment.[2] In their Response, in showing that Defendants did employ the Dancers, the Dancers provided two (2) affidavits of long term employees which were based on personal knowledge.[3] The Dancers also provided documents showing the schedules/line-ups of the Dancers (which were just a few examples of the hundreds of schedules/nightly line-ups provided in discovery to the Dancers from Defendants), e-mails from a DJ named Shane Smith, and the Rules and Policies of BJ Rooster's.[4]

---

[1] Doc. 88 at 1.
[2] Doc. 93.
[3] Doc. 93, Exhibits 2 and 4.
[4] Doc. 93, Exhibits 3, 5-8.

On January 5, 2015, Defendants filed a Motion to Strike asking this Court to strike every bit of evidence provided by the Dancers. First, Defendants asked this Court to strike the affidavits. It is unclear whether Defendants want the affidavits stricken in their entirety or just parts of particular paragraphs stricken. For instance, Defendants' Motion asks the Court to strike portions of Mr. Sheffield's and Mr. Paul's affidavits.[5] Also, in Defendants' Memorandum in Support of Their Motion to Strike, the subject heading for "Section A" also only asks that "portions" of the affidavits should be stricken. In the same document, Defendants only specifically object to a few paragraphs of Mr. Sheffield's and Mr. Paul's affidavits or only object to parts of particular sentences within the paragraphs of the affidavits. Defendants, however, then asks the Court to strike the affidavits altogether.

The Defendants only specifically asked this Court to strike the following provisions of the affidavits:

- Paragraph 3 which states that "[w]hile employed at BJ Rooster's, my bosses/employers were John Molinari and Robert Hamill. In fact, before working at BJ Rooster's, I worked with Mr. Molinari at Swinging Richards. At BJ Rooster's, my supervisor was Shane

_____

[5] Doc. 99 at 2.

3

Smith, who was also the DJ. I had contact with or saw either

Molinari or Hamill almost every evening I worked." Defendants

specifically object to the language where Sheffield and Paul tell this

Court that their bosses were Defendants and their supervisor was

Shane Smith. Defendants bizarrely claim that the statement is a legal

conclusion.

- Paragraph 4 which states that "[a]t all times during the past three (3)

  years, all dancers employed at BJ Rooster's were subject to the same

  rules I was subject to, and have all performed the same job

  functions." Defendants, again in a bizarre fashion, claim that

  because Sheffield only worked two (2) or three (3) nights per week,

  he would have no way of knowing if other Dancers with his same

  job were subject to the same rules on different nights of the week.

- Portions of Paragraph 7 which state that "[t]he DJ, Shane Smith,

  scheduled me and the other dancers, but all scheduling had to be

  approved by either Molinari or Hamill." Defendants claim that

  Sheffield had no personal knowledge if scheduling had to be

  approved by either Molinari or Hamill.

- Portions of Paragraphs 8 and 9 which state that Mr. Sheffield either
  paid fines directly to Defendants Molinari or Hamill or saw others
  pay fines directly to Defendants Molinari or Hamill. Defendants
  object to this statement and claim that it is inadmissible because
  Sheffield would have no way of knowing what Defendants would do
  with the money after he paid the money directly to them.

Ultimately, despite these being the only objections, Defendants ask this Court to strike the affidavits in their entirety.

Defendants also argue that the Shane Smith e-mails should be stricken because they are unsworn hearsay statements. Defendants further argue that the schedules and line-ups provided as evidence should be stricken because they are not authenticated business records despite the fact that Defendants produced them to Plaintiff in discovery. Finally, Defendants contend that the document entitled BJ Rooster's Rules and Policies should be stricken.

## ARGUMENT & CITATION TO AUTHORITIES

Defendants' Motion to Strike should be denied in its entirety.[6] First, the affidavits should not be stricken because they are based on personal knowledge.

---

[6] The cases makes clear that a Motion to Strike is inappropriate at the summary judgment phase, and instead should be titled a Notice of Objection to the Challenged Testimony. Skyler v. Clough, 2007 U.S. Dist. LEXIS 49248, at *4

Second, the Shane Smith e-mails should not be stricken because they can be reduced to admissible evidence at trial. Third, the Dancer's Schedule and Nightly Line-Up should not be stricken because the documents were provided by Defendants in discovery and can be reduced to admissible evidence at trial. And fourth, the document entitled BJ Rooster's Rules and Policies should not be stricken because it is, by Defendant Hamill's own admission, the same form that has always been used. This Response will first address the admissibility of the affidavits.

I.   THE AFFIDAVITS

As a general rule, an affidavit submitted in connection with a summary judgment motion is subject to a motion to strike if it does not comply with the standards of Rule 56(e) of the Federal Rules of Civil Procedure. Importantly, "[i]n considering a motion to strike, the Court must 'use a scalpel, not a butcher knife' and only strike portions that are inadmissible under [Rule 56(e)]". Wilson v. Budco, 762 F. Supp. 2d 1047, 1067 (E.D. Mich. 2011). "In other words, the Court must only strike the inadmissible portions of an affidavit, rather than the whole

(N.D. Ga. 2007). "Motions to strike are not a proper method for challenging the admissibility of evidence on summary judgment. Instead, a party should object to the evidence, and the court will determine which evidence is admissible." Chadwick v. Bank of Am., N.A., 2014 U.S. Dist. LEXIS 126197, at *7 (N.D. Ga. 2014).

affidavit." <u>Id.</u> Furthermore, it is the moving party's obligation to "specifically identify which statements in the affidavits should be struck" as it is not the court's duty to work through the "affidavit with a fine-tooth comb." <u>Id.</u> at 1058. Thus, in analyzing a motion to strike, the court should only consider statements that the moving party "specifically identifies." <u>Id.</u>

### a. Bosses and Supervisor Language

Sheffield swore in his affidavit that Defendants Molinari and Hamill were his bosses and that Shane Smith was his supervisor. Sheffield made this statement based on his personal knowledge and experience as a Dancer at BJ Rooster's for over six years.

An affiant swearing that someone is a boss and another is a supervisor is not a legal conclusion. When a non-lawyer refers to someone as a boss or supervisor, they are not reaching any legal conclusions whatsoever. Instead, an affiant is merely making a statement that more closely resembles a dictionary's definition of boss and supervisor, and not a confusing or complex legal definition meant to automatically conclusively determine that an employer/employee relationship exists under the FLSA. For instance, a supervisor, according to a dictionary, is simply "a person who supervises a person or an activity." Conversely, a boss is "a person in charge of a worker or organization." With six plus years of personal

experience at BJ Rooster's, Sheffield is qualified to say, Defendants Molinari and Hamill were in charge/or my boss. It is a statement of fact, not a legal conclusion.

### b.  All similarly situated dancers were subject to the same rules.

Plaintiff Sheffield's statement that he and all other Dancers were subject to the same rules and performed the same job functions is again an admissible statement of fact. Plaintiff Sheffield worked at BJ Rooster's for over six years. During that six year period, Plaintiff Sheffield worked with a lot of the Dancers. Certainly, he has personal knowledge and a good understanding of the rules that everyone is expected to follow. Even though Sheffield did not work every single night of the week, at the very least he can say that he followed the same rules that all other Dancers who worked on the same nights as him followed. It is almost preposterous to claim, as Defendants have here, that different rules apply to the Dancers on Tuesdays verus Wednesdays. In any event, this is a statement of fact that Defendants are free to rebut. Importantly, it is not subject to a motion to strike.

Defendants based their entire argument regarding this paragraph on Plaintiff Sheffield's affidavit because he worked two or three evenings per week. Defendants never provided to the Court Plaintiff Paul's discovery responses. Plaintiff Paul worked four (4) nights per week. *See* Response to Interrogatory No. 2, Adam Paul Discovery Responses, attached hereto as Exhibit "A".

### c.  Scheduling

The portions of the affidavit regarding scheduling are, yet again, admissible statements of fact. All statements are based on personal knowledge. Furthermore, asking for vacation or taking time off, is a factual matter directly related to scheduling. Sheffield swore that he had to ask Defendants Molinari or Hamill for vacation, time off, or even to leave early.

### d.  The Dancers paid fines directly to Defendants Molinari and Hamill.

Plaintiff's personal knowledge that he gave money, and saw others give money directly to Defendants Hamill and Molinari in the form of fines and fees is another admissible statement of fact. Any issue about what Defendants Molinari and Hamill did after they were given the money is an issue for the factfinder. This is nothing more than testimony that Sheffield gave money to Defendants on multiple occasions, and that he saw others do the same. This statement is clearly factual and not a legal conclusion.

Defendants' contentions that any portion of these affidavits are inadmissible due to the fact that they are legal conclusions and not personal observations and plain statements of fact are without merit, borderline frivolous, and in bizarre

confrontation of common sense.[7] Defendants' Motion to Strike plaintiffs' affidavits should be denied.

## II.  SHANE SMITH E-MAILS

By definition, the Shane Smith e-mails are hearsay, however, they are admissible for the purposes of summary judgment. A district court may "consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." Macuba v. Deboer, 193 F.3d 1316, 1323 (11th Cir. 1999).

The Shane Smith e-mails are admissible because the e-mails could be reduced to admissible evidence at trial simply by calling Shane Smith as a witness. As explained in Plaintiffs' Rule 56(f) Motion for Extension of Time to File a Response in Opposition to Defendants' Motion for Summary Judgment or in the Alternative to Supplement the Response in Opposition to Summary Judgment, Defendants' theory of the case—shifting all the blame to the DJ—did not become clear until Defendants filed their Motion for Summary Judgment.[8] At that point, when a response was due in a mere thirty (30) days, no adequate time existed to fly

---

[7] Admittedly, this is one of the least bizarre positions that Defendants have taken in this litigation. Defendants fanciful scenario in which rogue DJ's infiltrated Defendants' "go-go" club and brought with them herds of lawless male "go-go" dancers" over whom Defendants had no control remains Defendants' most bizarre position.

[8] Doc. 92.

to Florida and conduct a deposition. Now, however, with plenty of time before trial, the Dancers will be able to secure the DJ's presence for trial, and he can testify as to his personal knowledge.

III. DOCUMENTS PRODUCED IN DISCOVERY (INCLUDING THE DANCER'S SCHEDULE SHEET AND THE DANCER'S NIGHTLY LINE-UP)

As a general rule, when documents are produced during discovery, the documents are generally considered self-authenticating. Chadwick v. Bank of Am., N.A., 2014 U.S. Dist. LEXIS 126197, at *10 (N.D. Ga. 2014). In Chadwick, this Court emphasized that it is the Eleventh Circuit's directive that evidence may be considered on summary judgment as long as it can be presented in admissible form at trial. 2014 U.S. Dist. LEXIS 126197, at *10 (N.D. Ga. 2014). In that case, during the summary judgment phase, the plaintiff argued certain business records should not be considered because they were not properly authenticated. Id. at *9. In finding the evidence admissible, this Court stated that "[d]iscovery responses are generally considered self-authenticating in their own right." Id. at *10. Because all the documents were produced by plaintiff during discovery, this Court was entitled to consider them as admissible evidence on summary judgment.

Skylar v. Clough, another case decided by the Northern District of Georgia, analyzes a motion to strike during the summary judgment phase of litigation. 2007

U.S. Dist. LEXIS 49248 (N.D. Ga. 2007). In Skyler, the defendants produced numerous documents during discovery. Id. at *13. Included in these documents were budgets prepared by someone other than the defendants. Id. at *14. Ultimately, this Court determined that because the defendants admitted that the documents were business records of someone, then those "documents could be reduced to admissible evidence at trial through the testimony of a witness with personal knowledge of how the documents were compiled or maintained." Id. Therefore, the Court considered the documents admissible evidence on summary judgment. Id.

    The business records in this case, including the Dancers Nightly Line-Up and the Schedules, should be considered by this Court on summary judgment for any one of the following three reasons: because they were produced by Defendants during discovery, because the elements of the business record exception have been satisfied, and because the documents can be reduced to admissible evidence at trial. In this case, as in Chadwick, the business records are admissible simply because Defendants produced the documents in response to discovery.

    Even if the documents are not self-authenticating, the elements of the business records exception are still satisfied as Defendant Hamill is a qualified witness to authenticate them. Here, Defendant Hamill, in his deposition, admitted

that these were business records, but claimed that they were business records of

someone else.

> Q.    Please turn with me to what's been marked as Jobo's 328, and can you
>        tell me what that document is?
>
> A.    It looks like the nightly schedule. This is the one that [the DJ]
>        handwrites.
>
> Q.    So is this what he does every night?
>
> A.    Pretty much every night.

Deposition of Robert Hamill, Doc. 93, Exhibit 1, pgs. 46-47.

Hamill makes even more admissions regarding the documents:

> Q.    This is Shane's report that he made every night and he provided to
>        you correct?
>
> A.    Correct.
>
> Q.    So he was clearly leaving these notes for you, was he not?
>
> A.    He was leaving notes for me or the other DJ or himself.
>
> Q.    That you received every night; is that correct?
>
> A.    Not every night, no.
>
> Q.    The majority of nights; is that correct?
>
> A.    Sometimes.
>
> Q.    It wasn't the regular practice of Shane at BJ Roosters to do this at the
>        end of the evening and then leave it for you?

13

A.      Some nights, yes. He would leave them. But again –

Q.      Yes, apparently thousands and thousands of nights he left them?

A.      But you don't know that. You're speculating yourself.

Q.      No. I got them all right here.

A.      Thousands, okay.

Deposition of Robert Hamill, Doc. 93, Exhibit 1, pgs. 56-57.

In order to meet the qualifications of the business record exception, several elements must be satisfied. Fed. R. Civ. P. 803 (6). First, the record was made at or near the time by someone with knowledge. Second, the record was kept in the course of a regularly conducted activity of a business or organization. Third, making the record was a regular practice of the activity. Fourth, all of the above conditions are shown by the testimony of the custodian or another qualified witness. And finally, the opponent does not show a lack of trustworthiness.

All elements are satisfied here, or at the very least, can be obtained at trial when the DJ testifies. First, Defendant Hamill admits that the records were made each night by the DJ, who had knowledge of what was going on with the Dancers. Second, the record was kept in the course of a regularly conducted activity of the business. Defendant Hamill admitted that "go-go dancers" have been part of BJ

14

Rooster's for years, and he also admitted that he has seen thousands of these documents. Thousands of documents indicates that this activity was one that was regular. In satisfying the third element, Defendant admitted that the DJ made the records every evening, and therefore, making the record was regular. Finally, because Defendant Hamill regularly saw the documents and knew that the DJ made them every night, he is a qualified witness to authenticate the documents for purposes of this summary judgment.

IV.   BJ ROOSTER'S RULES AND POLICIES

This Court should consider the BJ Rooster's Rules and Policies during the summary judgment phase. Although the attached rules sheet is dated 2014, Defendant Hamill admitted that it is the same form or "basically the same form" that has been used since BJ Rooster's has had "go-go dancers."[9] Defendant Hamill further stated that while there has been some change to the Rules and Policies of BJ Rooster's, "[i]t's pretty close to the one he had before."[10]

The Dancers provided the form from 2014 because they had no other choice. Defendants failed to submit a different version in discovery, even though when

---

[9] Doc. 93, Exhibit 1, pg. 43.
[10] Doc. 93, Exhibit 1, pg. 69.

being questioned about the Rules and Policies of BJ Roosters, Defendant Hamill

stated, "I'd have to go back and look at some of the old sheets."[11]

## CONCLUSION

Based on the foregoing, Plaintiff, and all others similarly situated who have

consented to their inclusion in this collective action, respectfully requests that this

Court DENY Defendants' Motion to Strike.

This 14th day of January 2015.

Respectfully submitted,

SMITH, COLLINS & FLETCHER, P.A.


8565 Dunwoody Place
Building 15 Suite B
Atlanta, GA 30350
Phone: (678) 245-6785
Fax: (888) 413-3031
Anthony@SCandF.com

*/s/ W. Anthony Collins, Jr.*
W. Anthony Collins, Jr.
Georgia Bar No. 141712

*Attorney for Plaintiff*

---

[11] Doc. 93, Exhibit 1, pg. 72.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**CHARLES ALLEN, individually and on behalf of all others similarly situated who consent to their inclusion in a collective action,**

       **Plaintiff,**

  **vs.**

**JOBO'S, INC., d/b/a BJ Roosters, a corporation, and ROBERT HAMILL and JOHN MOLINARI, individuals,**

      **Defendants.**

Civil Action No. 1:13-CV-3768-RWS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I filed the foregoing document in the

Court's electronic case filing system, thereby ensuring service upon the following

counsel of record

J. Larry Stine
Elizabeth K. Dorminey
WIMBERLY, LAWSON, STECKEL, SCHNEIDER & STINE, P.C.
Suite 400, Lenox Towers
3400 Peachtree Road, N.E.
Atlanta, Georgia 30326

Dated: January 14, 2015.

/s/ W. Anthony Collins, Jr.
W. Anthony Collins, Jr.
Georgia Bar No. 141712